JOHN EDMUNDS & another *vs.* MERCHANTS' DESPATCH
TRANSPORTATION COMPANY.

JOSIAH C. BENNETT & another *vs.* SAME.

C. H. ABORN & another *vs.* SAME.

Suffolk. Jan. 17.—July 3, 1883. FIELD & W. ALLEN, JJ., absent.

If A., fraudulently assuming the name of a reputable merchant in a certain town,
buys, in person, goods of another, the property in the goods passes to A., and
the seller cannot maintain an action against a common carrier, to whom the
carriage of the goods is entrusted, for delivering them to A.

If A., representing himself to be a brother of a reputable merchant in a certain
town, buying for him, buys, in person, goods of another, the property in the
goods does not pass to A.; and, in an action by the seller against a common
carrier, to whom the carriage of the goods is entrusted, for delivering them to
A., the carrier cannot justify on the ground that he has delivered them to the
owner.

THREE ACTIONS OF TORT, with counts in contract, against a
common carrier, to recover the value of certain goods entrusted
to the defendant by the plaintiffs, at Boston, for carriage to Day-
ton, Ohio. At the trial in the Superior Court, before *Rockwell*,
J., the jury returned verdicts for the plaintiffs ; and the defend-
ant alleged exceptions. The facts appear in the opinion.

*A. Russ & B. Kimball*, for the defendant.

*S. B. Allen*, (*W. B. Allen* with him,) for the plaintiffs.

MORTON, C. J. These three cases were tried together. In
some features they resemble the case of *Samuel* v. *Cheney, ante,*
278. In other material features they differ from it. They also
in some respects differ from each other. In two of the cases, a
swindler, representing himself to be Edward Pape of Dayton,
Ohio, who is a reputable and responsible merchant, appeared
personally in Boston, and bought of the plaintiffs the goods
which are the subject of the suits respectively. In those cases,
we think it clear, upon principle and authority, that there was a
sale, and the property in the goods passed to the purchaser.
The minds of the parties met and agreed upon all the terms of the
sale, the thing sold, the price and time of payment, the person sell-
ing and the person buying. The fact that the seller was induced
to sell by fraud of the buyer made the sale voidable, but not
void. He could not have supposed that he was selling to any

other person; his intention was to sell to the person present, and identified by sight and hearing; it does not defeat the sale because the buyer assumed a false name, or practised any other deceit to induce the vendor to sell.

In *Cundy* v. *Lindsay*, 3 App. Cas. 459, 464, where the question was whether a man, who in good faith had bought chattels of a swindler who had obtained possession of them by fraud, could hold them against the former owner, Lord Chancellor Cairns states the rule to be that, " if it turns out that the chattel has come into the hands of the person who professed to sell it, by a *de facto* contract, that is to say, a contract which has purported to pass the property to him from the owner of the property, there the purchaser will obtain a good title."

In the cases before us, there was a *de facto* contract, purporting, and by which the plaintiffs intended, to pass the property and possession of the goods to the person buying them; and we are of opinion that the property did pass to the swindler who bought the goods. The sale was voidable by the plaintiffs; but the defendant, the carrier by whom they were forwarded, had no duty to inquire into its validity. The person who bought them, and who called himself Edward Pape, owned the goods, and upon their arrival in Dayton had the right to demand them of the carrier. In delivering them to him, the carrier was guilty of no fault or negligence. It delivered them to the person who bought and owned them, who went by the name of Edward Pape, and thus answered the direction upon the packages, and who was the person to whom the plaintiffs sent them. *Dunbar* v. *Boston & Providence Railroad*, 110 Mass. 26. The learned judge who tried the cases in the Superior Court based his charge upon a different view of the law; and, as the three cases were tried together, there must be a new trial in each.

It seems to have been assumed that the same questions are raised in each case. It is proper that we should add that the third case differs materially from the others. In that case, the contract did not purport, nor the plaintiffs intend, to sell to the person who was present and ordered the goods. The swindler introduced himself as a brother of Edward Pape of Dayton, Ohio, buying for him. By referring to the mercantile agency, he tacitly represented that he was buying for the

Edward Pape who was there recorded as a man of means. The plaintiffs understood that they were selling, and intended to sell, to the real Edward Pape. There was no contract made with him, because the swindler who acted as his agent had no authority, but there was no contract of sale made with any one else. The relation of vendor and vendee never existed between the plaintiffs and the swindler. The property in the goods, therefore, did not pass to the swindler; and the defendant cannot defend, as in the other cases, upon the ground that it has delivered the goods to the real owner. *Hardman* v. *Booth*, 32 L. J. (N. S.) Ex. 105. *Kingsford* v. *Merry*, 26 L. J. (N. S.) Ex. 83. *Barker* v. *Dinsmore*, 72 Penn. St. 427.

Whether the defendant has any other justification or excuse for delivering the goods to the swindler is a question not raised by this bill of exceptions, and not considered at the trial; and therefore we cannot express an opinion upon it.

*Exceptions sustained.*