## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

ALVIN RODLIFF & another *vs.* FRANK W. DALLINGER.

Suffolk.   Nov. 10, 1885. — Jan. 11, 1886.   DEVENS & GARDNER, JJ., absent.

If A., after refusing to sell goods to B., a broker, personally, delivers the goods to B. upon his representation that they are for an undisclosed principal in good credit, and it turns out that no such principal exists, there is no sale, although the transaction is entered on A.'s books as a sale to B., and a bill of parcels of the goods is made to him; and A. may maintain replevin for the goods against a *bona fide* pledgee of B.

REPLEVIN of twenty bags of California wool.   Trial in the Superior Court, before *Knowlton*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiffs, under the firm name of Rodliff and Eaton, were wool dealers in Boston, and, on or about November 15, 1882, delivered the wool in controversy to one Henry Clementson, a wool dealer and broker in Boston, as hereinafter stated.

The defendant was a public warehouseman in Boston, who received the wool in question on storage from Clementson, on or about said November 15, 1882, not knowing where he obtained it, and issued a warehouse receipt for the same, described hereafter.

On the day after the delivery of said wool, Clementson ap-plied to the Massachusetts Loan and Trust Company of Boston, a corporation whose business is that of advancing money upon staple merchandise, for a loan of $2000 on said wool, then in the public warehouse of the defendant. The company sent a man to the warehouse to examine the wool, and, on his report, made a loan of $2000 to Clementson, taking the warehouse re-ceipt of the defendant, reciting that the wool had been received from Clementson and placed on storage for account of the Massachusetts Loan and Trust Company, the company having no knowledge where Clementson obtained the wool, his state-ment being that he had purchased the wool to sell upon the market; and the company, being the real party in interest, de-fended this action.

The plaintiff Rodliff testified that, in September, 1882, his firm sold and delivered to Clementson certain California wool, of the value of about $2000, entered the same on their books as sold to him, and made out a bill of sale directly to him, the wool being sold on sixty days' time, which wool was duly paid for by Clementson; that afterwards, prior to November 14 of that year, the plaintiffs made two other sales to Clementson out of the same lot of California wool, which had been consigned to them for sale; that Clementson, acting as broker in each of these last two sales, received his brokerage, and gave the name of the persons for whom the wool was purchased, namely, Pomeroy and Sons, of Pittsfield; that the wool in both these cases was charged to Pomeroy and Sons on the books of the plaintiffs, together with the entry of brokerage to Clementson; that a bill was also made out directly to Pomeroy and Sons; and that in both these cases the wool was sold on time, and was duly paid for.

On or about November 14, 1882, one of the plaintiffs had an interview with Clementson, about which he testified as follows: " He came in and brought an offer of twenty-two and one fourth cents per pound for some manufacturer. This was for twenty bales of the same lot of California wool. Finally he said he did not want us to know who the manufacturer was; he wanted to conceal that. I told him I did not know how he could get over it, for I would not sell him that amount or anywhere near it.

We made an arrangement that we were to let him have the wool, and were not to lose our claim upon it, but he was to hand us over whatever he got for it as soon as he got it. I said we would weigh up that wool, and he was to hand us over the check as soon as he got it." The witness was present when the wool was loaded on the wagon Clementson sent to receive it. The plaintiffs did nothing about collecting pay for the wool until they had learned that Clementson had left the country, and made no inquiry of him relating to the same, the sixty-one days' credit not having then expired.

The plaintiffs asked Clementson who the parties were, and he would not tell them, but said they were as good as Pomeroy and Sons, who were in good standing and credit with the plaintiffs.

The wool was sold on sixty-one days' credit, and was entered on the books of the plaintiff as a direct sale to Clementson, and a bill of parcels was made directly to Clementson, as in the sale to him in September, and no mention was made, either on the books or on the bill, of any other person, or of any brokerage.

A statement of the weights was delivered to Clementson, and the wool was thereupon delivered on wagons sent by Clementson, which took the wool to the warehouse of the defendant, the plaintiffs not knowing where the wool was taken.

Rodliff further testified that, when the wool left the store, they did not expect to see it again, and only expected to be paid for it; that they knew Clementson was speculating in wool. After the delivery of the wool, Clementson had further transactions with the plaintiffs, and as late as January 2, 1883; but, on January 5, 1883, learning that Clementson had left Boston, they replevied the wool before the expiration of sixty-one days, having received no payment for it. Early in 1883, Clementson left the country for Demerara, where he still resides. No part of the advance made by the Massachusetts Loan and Trust Company has ever been repaid.

It was an undisputed fact that Clementson had not any such offer, and did not act for any such person as the plaintiffs testified that he represented at the time of obtaining the wool.

The judge instructed the jury that there were three possible views of the transaction: (1.) that they might find it was an ordinary sale to Clementson; or (2.) that it was not a sale to

Clementson, but was a delivery to Clementson as a broker, with a view to his selling it to some customer, whom he expected afterward to negotiate with, and to consummate a sale with him; and, if they found this, then there was a special provision of the statute which protects persons dealing in good faith with a broker having property in that way, so far as they make advances or loans upon property in pledge, in good faith, to persons who have custody of property as brokers, with authority to sell or dispose of it; or (3.) that it was not a sale to Clementson, or a delivery to him as broker with authority to sell, but that it was a delivery to Clementson, upon his representation that he came from a purchaser, representing him, with an offer for it, — a purchaser whose name he did not disclose, — and that these goods were delivered to him as the agent of that purchaser, as a sale to that purchaser; and if this was the fact, that the plaintiffs were entitled to the property, notwithstanding it was subsequently pledged to the Massachusetts Loan and Trust Company.

The judge further instructed the jury, upon the third view, " that, if this was a transfer upon a false representation made by Clementson, — a representation that he came with an offer from a third person whose name he did not wish to disclose, — and the goods were delivered to Clementson as a sale to him as the agent of this third person whose offer he was bearing, with the view that the property should pass at the time to that third person and thus constitute a sale to such person, from whom payment was to be made subsequently, and the payment to be brought back by Clementson as the agent of that third person, Clementson had no right afterward to deal with that property at all; that he got it into his possession by fraud, and he got it into his possession without any authority to make any subsequent sale, or to do anything with it; and that it was wrongly in his possession from the start, and any person who saw fit to advance money upon it or to buy it, however honestly, and in perfect good faith, would be the loser, and the plaintiffs could pursue the property and get it wherever they could find it, whenever the fraud practised upon them should come to their knowledge."

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*H. D. Hyde*, for the defendant.

*A. Hemenway*, for the plaintiffs.

HOLMES, J. The plaintiffs' evidence warranted the conclusion that they refused to sell to Clementson, the broker, but delivered the wool to him on the understanding that it was sold to an undisclosed manufacturer in good credit with the plaintiffs. This evidence was not objected to, and was admissible, notwithstanding the fact that the sale was entered on the plaintiffs' books as a sale to Clementson, and that a bill was made to him. *Commonwealth* v. *Jeffries*, 7 Allen, 548, 564. It was admitted that Clementson, in fact, was not acting for such an undisclosed principal; and it follows that, if the plaintiffs' evidence was believed, there was no sale. There could not be one to this supposed principal, because there was no such person, and there was not one to Clementson, because none purported to be made to him, but, on the contrary, such a sale was expressly refused and excluded. *Edmunds* v. *Merchants' Despatch Transportation Co.* 135 Mass. 283.

It was suggested that this case differed from the one cited, because there the principal was disclosed, whereas here he was not, and that credit could not be supposed to have been given to an unknown person. We have nothing to say as to the weight which this argument ought to have with a jury, beyond observing, that the plaintiffs had reason in Clementson's representations for giving credit to the supposed manufacturer. But there is no rule of law that makes it impossible to contract with or sell to an unknown but existing party. And if the jury find that such a sale was the only one that purported to be made, the fact that it failed does not turn it into a sale to the party conducting the transaction. *Schmaltz* v. *Avery*, 16 Q. B. 655, only decides that a man's describing himself in a charter-party as "agent of the freighter" is not sufficient to preclude him from alleging that he is the freighter. It does not hint that the agent could not be excluded by express terms, or by the description of the principal, although insufficient to identify the individual dealt with, as happened here; still less, that in favor of third persons the agent would be presumed without evidence to be the undisclosed principal, although expressly excluded.

The invalidity of the transaction in the case at bar does not depend upon fraud, but upon the fact that one of the supposed parties is wanting, it does not matter how. Fraud only becomes important, as such, when a sale or contract is complete in its formal elements, and therefore valid unless repudiated, but the right is claimed to rescind it. It goes to the motives for making the contract, not to its existence; as when a vendee expressly or impliedly represents that he is solvent and intends to pay for goods, when in fact he is insolvent, and has no reasonable expectation of paying for them ; or, being identified by the senses and dealt with as the person so identified, says that he is A., when in fact he is B. But when one of the formal constituents of a legal transaction is wanting, there is no question of rescission ; the transaction is void *ab initio*, and fraud does not impart to it, against the will of the defrauded party, a validity that it would not have if the want were due to innocent mistake.

The sale being void, and not merely voidable, or, in simpler words, there having been no sale, the delivery to Clementson gave him no power to convey a good title to a *bona fide* purchaser. He had not even a defective title, and his mere possession did not enable him to pledge or mortgage. The considerations in favor of protecting *bona fide* dealers with persons in possession, in cases like the present, were much urged in *Thacher* v. *Moors*, 134 Mass. 156, but did not prevail. Much less can they be allowed to prevail against a legal title, without the intervention of statute.                    *Exceptions overruled.*