STEPHEN A. BREED & another *vs.* HORACE J. GARDNER
& another.

ASA M. DUQUET *vs.* SAME.

Suffolk.    December 6, 1904. — January 7, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Mechanic's Lien,* Bond to dissolve.    *Bond,* To dissolve mechanic's lien.    *Master in Chancery.    Deed,* Registration.

The fact that a conveyance of real estate subject to a mechanic's lien is made to a person for the purpose of his giving a bond under R. L. c. 197, § 28, to dissolve the lien, although it may be important evidence of fraud, does not in itself affect the title of the grantee.

A bond given under R. L. c. 197, § 28, to dissolve a mechanic's lien, bearing the signatures of sureties forged by persons falsely impersonating those whose names are signed, does not comply with the requirement of the statute of a bond with sureties, and has no effect to discharge the lien. The approval of the sureties by a master in chancery gives no validity to such a bond, as the approval is only of the qualifications and fitness of the persons whose names are signed, and it is not a part of the master's duty to pass upon the question whether the signatures are forged.

A forged instrument gains no validity from being recorded in the registry of deeds and a *bona fide* purchaser of land which would be affected by it if it were genuine gets no better title by relying on it as recorded.

TWO PETITIONS, filed October 10, 1901, and July 19, 1901, to enforce mechanics' liens on certain real estate on Magnolia Street in that part of Boston called Dorchester.

In the Superior Court the cases were tried together before *Sheldon,* J. It appeared that in the latter part of February or the early part of March, 1903, the validity of the liens being in dispute and no hearings having been had on the petitions to

establish them, the owners of the equity of redemption of the real estate in question executed and delivered to one William C. Brackett a quitclaim deed conveying the legal title of the property to Brackett. The title so was conveyed for the purpose of having Brackett give bonds dissolving the alleged liens. This purpose was not stated in the deed, but was explained orally to Brackett. Brackett was not pecuniarily responsible, and frequently was employed by different persons to take title to real estate in order to give mortgages thereon and sign mortgage notes. He paid nothing for the conveyance. He was paid by the persons from whom his grantors purchased the property $5 for signing each of the bonds. Otherwise, he had no interest in the property. Soon after taking title Brackett executed bonds as principal for the purpose of dissolving the liens, the bonds being filled out with a description of the property, his own name as principal obligor and the names of the obligees, but being left blank as to dates and the names of sureties. These instruments signed by Brackett were delivered by him to an agent employed by the persons from whom his grantors had purchased, to be used in discharging the liens.

On May 29, 1903, the bonds were filled out completely, one in favor of the petitioners Breed and Trask, and the other in favor of the petitioner Duquet, and were signed by two men, who represented themselves to be John F. Perry and Thomas F. Connor. Counsel for Breed and Trask and Duquet were notified that application would be made to Major Edward J. Jones, a master in chancery, to approve the sureties on the two bonds. Each of the counsel by writing on the back of the instruments waived notice of the time and place of hearing, each attended the hearing before the master in chancery, and each had an opportunity to see and examine the persons who were offered as sureties. The signing by the persons offered as sureties was done in the presence of the master in chancery, and he signed as witness to their signatures. The bonds were in the usual form, the one in the Breed case being for $2,000 and the one in the Duquet case being for $4,000. The persons presented as sureties were sworn and questioned by the master, who took down in writing what they testified to. The master made a brief record of the cases in his docket or record book. Nothing appeared to excite any suspicion

that the persons offered as sureties were not the persons who they represented themselves to be, or that their conduct was in any way irregular, or that their statements were untrue. The master, after the examination and hearing, signed the blank on the back of each bond approving the sureties. On the same day the instruments were recorded in the registry of deeds of Suffolk County.

In July, 1903, one Mary A. Bolster foreclosed a mortgage upon the property by a sale under the power in the mortgage, and the title was taken by Wilbert S. Bartlett acting for the mortgagee. On July 29, 1903, Bartlett signed an agreement in writing to sell and convey the property to Samuel E. Blanchard, free from incumbrances, except mortgages amounting to $40,000, taxes for 1903 and a sewer assessment. On July 30, 1903, he executed and delivered to Blanchard a warranty deed of the property purporting to convey it free from incumbrances except as stated in the agreement. This deed was recorded the same day. Blanchard had the record title examined, and the judge found that he purchased for value in good faith, relying upon the record title. Blanchard took possession of the property on August 1, 1903, and ever since has been in possession, collecting the rents.

On May 26, 1904, verdicts were given for the petitioners, in the Breed case in the sum of $1,138.46, and in the Duquet case in the sum of $3,170. Thereafter the counsel for Breed and Duquet made an examination concerning the sureties on the bonds, and in June, 1904, became convinced that the persons who signed as sureties had committed perjury and forgery and were not the persons they had pretended to be. They informed Blanchard and Bolster of what they had learned and at once filed motions asking for an order of sale.

This was the first information or notice which Blanchard had that anything was wrong about the giving of the bonds. On June 29, 1904, he filed by consent in each of the cases an intervening petition setting out his title as a *bona fide* purchaser for value, and praying to be admitted as a party respondent to defend the cases and to be heard in opposition to the motions asking for an order of sale.

The judge found that the persons who signed the bonds as

sureties forged the names of the persons they falsely impersonated and were guilty of perjury in their statements as to who they were and the property they owned. These persons since have disappeared. It did not appear who, if any one, other than the sureties was guilty of fraud or criminality in the matter.

The petitioners contended that Brackett did not have a sufficient title to make him competent to give bonds to dissolve the liens, but the judge refused so to rule and ruled that Brackett upon the facts above found took the legal title to the property and was competent to give bonds to dissolve the liens.

The respondents contended that inasmuch as the motions for an order of sale were made in proceedings at law, the petitioners could not go behind the recorded deeds and instruments, and also that the approval of the sureties upon the bonds by the proper magistrate after a hearing followed by the recording of the bonds in the registry of deeds operated to discharge the liens, especially as against Blanchard, a *bona fide* purchaser, who took his deed relying upon the record title. The respondents contended that upon all the facts the petitioners were not entitled to an order of sale. The judge ruled that the signatures of the sureties upon the bonds being forgeries the instruments were null and void, and were entirely inoperative in spite of the action of the magistrate.

It was agreed that each of the petitioners was entitled to an order of sale unless the bonds dissolved the liens. The judge ordered that in each case the lien be established for the amount found by the jury, and that an order of sale issue. At the request of the respondents, he reported the cases for determination by this court, it being stipulated that the orders should be affirmed if, upon the facts above set forth, the petitioners were found entitled to the orders of sale prayed for; otherwise, the orders were to be reversed, and the cases were to stand for such further action in the Superior Court as law and justice should require.

*H. R. Bailey*, for the respondents.

*N. F. Hesseltine*, for the petitioners Breed and Trask.

*A. H. Russell*, for the petitioner Duquet.

KNOWLTON, C. J.   We shall assume, in favor of the respondents, the correctness of the ruling that Brackett had a sufficient

title to bring him within the R. L. c. 197, § 28, authorizing a person having an interest in property upon which a mechanic's lien is claimed, to give a bond to dissolve the lien upon his interest. He held a conveyance of the equity of redemption, which purported to give him the estate, subject to mortgages. The mere fact that the conveyance was made to him with a view to his giving a bond to dissolve the lien does not affect his title. The owners were in the exercise of their legal right in making the conveyance, and he took the title with the incidents which legally pertained to it. *Curtis* v. *Galvin*, 1 Allen, 215. *Hayes* v. *Fessenden*, 106 Mass. 228. *Glendon Co.* v. *Townsend*, 120 Mass. 346. *Landers* v. *Adams*, 165 Mass. 415. Of course, upon a question whether the bond was given and the approval of it obtained and the record of it made fraudulently, such a conveyance might be very important evidence.

The signatures of the two sureties on the bond were forgeries, and the question is whether the instrument has any legal effect. As against the sureties, it is void. It is, in law, like a bond without sureties. Such a bond does not comply with the requirement of the statute which calls for sureties, and has no effect to discharge the lien. It is even more plainly ineffectual to accomplish its intended object than the bonds which were held void because not signed by the principal, in *Bean* v. *Parker*, 17 Mass. 591, 604, and *Wood* v. *Washburn*, 2 Pick. 24.

The respondents contend that the signing by the sureties in the presence of the master in chancery, and their false answers in regard to their property, constituted an adoption by them of the names which they appended to the instrument, and that this false impersonation made the bond legal and binding upon them as sureties. This is a mistaken view of the contract. Whatever civil remedy might be had against them by a party injured, the bond was given and recorded and accepted as the bond of the persons whose names appeared upon it as principal and sureties. It was an instrument under seal, and the contract embodied in it was a contract in writing, which showed the parties to the instrument, as well as its other provisions. The contract did not grow out of the presence of the two sureties and their oral representations, but out of the instrument itself, which purported to bind the persons whose names appeared upon it as obligors.

The signing as a false impersonation was not unlike ordinary forgeries.  Their further impersonation of the supposed sureties in the examination as to their property did not make the contract with them, as persons present under assumed names ; but it left the instrument to tell the story of the contract, and they pretended that it told the truth.   The case differs materially from the cases cited by the respondents.   See *Edmunds* v. *Merchants' Despatch Transportation Co.* 135 Mass. 283 ; *Bassett* v. *Daniels,* 136 Mass. 547 ; *Robertson* v. *Coleman,* 141 Mass. 231.   See also *Bartlett* v. *Tucker,* 104 Mass. 336 ; *Grafton National Bank* v. *Wing,* 172 Mass. 513.   The instrument was not within the terms of the statute.

The respondents contend that the approval of the sureties by the master in chancery, under the statute, made the bond good ; but his approval was only of the qualifications and fitness of the persons whose names appeared upon the instrument as sureties. It was no part of his duty to pass upon the question whether the signatures were forged or genuine.   He was to inquire into the financial ability and the suitableness of the persons represented by the names appended to the instrument.   His signature gave no validity to the forged bond.

It is not contended by the respondents that a title taken by a *bona fide* purchaser, in reliance upon a forged instrument recorded in the registry of deeds, is good if a valid instrument of that kind is needed to transfer the title from a former holder.   In the present case Blanchard stands no better than did Bolster, from whom he took his deed.   In each case the entry is to be,

*Order affirmed.*