# Hickey *v.* McDonald Bros.

## *Detinue.*

(Decided June 5, 1907.   44 South. 201.)

*Sales; Passing Title; Receipt; Fraud.*—Notwithstanding the sale was on a credit, and was procured to be made by a fraudulent representation as to the buyer's personal identity, yet if it was the intention of the seller that the title to the property in controversy should pass to the buyer at the time of the sale, and pending the maturity of the debt the buyer sells the property to an innocent purchaser for value, the seller becomes subordinated to the right of such innocent purchaser and cannot recover the property of the innocent purchaser.

32 R

. APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action of detinue by McDonald Bros. against T. J. Hickey. From a judgment for plaintiff, defendant appeals. Reversed.

The facts upon which this case was tried are substantially as follows: A man representing himself to be J. W. Pressner went to the sales stables of Ramsey in Mobile and endeavored to purchase a mule on credit, representing that he was J. W. Pressner in the lumber business at Creola, Ala. Ramsey was not present and no one in the stables had authority to sell the mule on a credit, whereupon, one of Ramsey's employes carried the man from the stables to McDonald Bros. and introduced him as J. W. Pressner. He represented to McDonald Bros. that his business was that of logging for the Creola Lumber Co., and that the day previous a tree had fallen on one of his mules of a four mule team, and that he was in urgent need of a mule to take his place. McDonald Bros. showed him a mule and the price of $200.00 was agreed on. Pressner represented that the Creola Lumber Co. owned him more than $200.00 and that he would get a settlement out of them in about 30 days and pay for the mule, and that in the meantime, he would execute McDonald Bros. a mortgage on the mule purchased, and his three mules and twelve head of oxen then at his lumber camp. This was agreed to and the mortgage so executed and recorded. The man representing himself to be Pressner was really one John Tilley who was working for Hickey, the defendant as a hand at the plaining mill. The mule was delivered to him by McDonald Bros., and he carried it to Hickey's barn where he kept it awhile, representing to Hickey that one Payne owed him a debt of $250.00 for which he had given him a mortgage on this mule and another mule,

[Hickey v. McDonald Bros.]

and that in order to avoid the expense of a foreclosure Payne had paid him $50.00 and delivered him this mule. He offered to sell the mule to Hickey for $140.00 and Hickey bought the mule paying Tilley $50.00 in cash, a gold watch and chain, valued at $35.00 and a credit on Tilley's account of $25.00, and an additional $25.00 to be paid at a later day. Hickey examined the records of Mobile county for any mortgage that Tilley might have made on his property, but failed to find such a mortgage and bought the property paying for it as above stated. When McDonald Bros. found that Hickey had the mule, they made demand on him for the property stating the facts to him, and on his refusal brought this suit.

STEPHENS & LYONS, for appellant.—Whenever goods are obtained from their owner by fraud we must distinguish whether the facts show a sale to the party guilty of the fraud, or a mere delivery of the goods into his possession, induced by the fraudulent representation. If the former is true, there is a sale and the property passes; if the latter is true, then the pos se-sion may be rescinded and the property recovered. In the former case an innocent purchaser acquired a good title; in the latter case an innocent purchaser acquires no title because his vendor has none to convey.—*Robinson, et al. v. Levi,* 81 Ala. 134; *Scheuer v. Goetter,* 102 Ala. 213; *Peterson v. Steiner Bros.,* 108 Ala. 629; *Wilke v. Key, et al.,* 117 Ala. 285; *Edmunds v. Transportation Co.,* 135 Mass. 282; *Mackey v. Cole,* 48 N. W. 520; Benjamin on alSes, §§ 648-9. The record of the mortgage from Pressner to McDonald Bros. was not notice of a mortgage on Tilley's property.—*Johnson v. Wilson & Co.,* 137 Ala. 468; *Grimmer v. Nolan,* 40 South. 97.

[Hickey v. McDonald Bros.]

SULLIVAN & STALLWORTH, for appellee.—One of the essential elements of a sale is mutual assent to the same thing.—Benjamin on Sales, § 1; Tiedeman on Sales, § 2; 24 A. & E. Ency. of Law, 1034 and note 9. When a person passes himself off for another, and thus obtains the vendor's assent to the sale and even a delivery of the goods, the whole contract is void.—Benjamin on Sales, § 60; Tiedeman on Sales, § 35; 9 Cyc. p. 401. A fraudulent vendee who gets by seller's mistake, as to buyer's identity, cannot sell a good title.—24 A. & E. Ency. of Law, 1166-67.

DOWDELL, J.—This is a suit in detinue by the vendor against the subpurchaser of an alleged fraudulent vendee of the plaintiffs for the recovery of a mule. The cause was partly tried on an agreed statement of facts, and, the evidence being without dispute as to the alleged fraud of the original vendee, the court, at the request of the plaintiffs in writing, gave the general affirmative charge to find for the plaintiffs.

It is evident that the general charge to find for the plaintiff was given upon the theory that the title to the property had never passed out of the plaintiff. The fraud consisted in a misrepresentation by the original vendee of his personal identity. The undisputed facts show that all of the terms of the sale were agreed upon between the plaintiffs and their vendee, and the possession of the property was delivered to the vendee, and his notes were taken for the purchase price payable to the plaintiffs, together with a mortgage to secure the same on the property sold. The adjudications of the courts on the question as to whether, under such a state of facts, the title to the property passed out of the vendors, are not in harmony. It seems, however, that the better established doctrine is that under such facts the title

would pass. In Benjamin on Sales (Bennett's 7th Ed. 1899) § 433, it is said: "It was not until 1866 that it was finally settled whether the property in goods passes by a sale which the vendor has been fraudulently induced to make. The cases *Stevenson v. Newnham,* in Exchequer Chamber, and of *Pease v. Gloahec,* in the Privy Council, confirming the principles asserted by the Exchequer in *Kingsford v. Merry,* taken in connection with the decision of the House of Lords in *Oakes v. Turquand,* leave no room for further question. By the rules established in these cases, whenever goods are obtained from their owner by fraud, we must distinguish whether the facts show a sale to the party guilty of the fraud, or a mere delivery of the goods into his possession, induced by fraudulent devices on his part. In other words, we must ask whether the owner intended to transfer both the property in and the possession of the goods to the person guilty of the fraud, or to deliver nothing more than the bare possession. In the former case there is a contract of sale, however fraudulent the device, and the property passes; but not in the latter case. In the former case the contract is voidable at the election of the vendor, and not void ab initio. It follows, therefore, that the vendor may affirm and enforce it, or may rescind it. He may sue in assumpsit for the price, and this affirms the contract, or he may sue in trover for the goods or their value, and this disaffirms it. But in the meantime, and until he elects, if his vendee transfer the goods in whole or in part, whether the transfer be of a general or of a special property in them, to an innocent third person for a valuable consideration, the rights of the original vendor will be subordinate to those of such innocent third person. If, on the contrary, the intention of the vendor was not to pass the property, but merely to part with the possession of the

goods, there is no sale, and he who obtains such possession by fraud can convey no property in them to any third person, however innocent, for no property has passed to himself from the true owner."

The case of *John Edmunds et al. v. Merchants' Dispatch & Transportation Co.,* 135 Mass. 283, upon this question, seems to be directly in point. The principle also finds support in the following cases: *Barker v. Dinsmore,* 72 Pa. 427, 13 Am. Rep. 697; *McCrillis v. Allen,* 57 Vt. 505; *Alexander v. Swachhamer,* 105 Ind. 81, 4 N. E. 433, 5 N. E. 908, 55 Am. Rep. 180; *Peters Box & Lumber Co. v. Lesh,* 119 Ind. 98, 20 N. E. 291, 12 Am. St. Rep. 367; *Rodliff v. Dallinger,* 141 Mass. 1, 4 N. E. 805, 55 Am. Rep. 439. This principle is recognized in our own adjudications as to the question of farud and its effect in contracts of sale of goods.—*Wilk v. Key, Simmons & Co.,* 117 Ala. 285, 23 South. 6, where other cases are cited. In the case before us the evidence without dispute showed a sale of the property, in contradistinction to a mere parting of possession of it.

Our conclusion is that the trial court erred in giving the general charge for the plaintiff, and for this error the judgment appealed from must be reversed. The giving of the general charge constitutes the only assignment of error in the record.

Reversed and remanded.

TYSON, C. J., and ANDERSON and MCCLELLAN, JJ., concur.