BRIGHTON PACKING COMPANY *vs.* BUTCHERS' SLAUGHTERING AND
MELTING ASSOCIATION.

Suffolk.    January 19, 1912. — March 1, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DECOURCY, JJ.

*Contract,* What constitutes.    *Equity Jurisdiction,* Specific performance.    *Corpora-
tion,* Identity, Reorganization.    *Estoppel.*

In a suit in equity by the alleged assignee of a lease of real estate and of a subse-
quent agreement of modification, to enforce the provisions of such subsequent
agreement, it appeared that the lease was given by the defendant to a certain
South Dakota corporation, which entered into possession of the premises as
lessee, that such lessee caused to be organized under the laws of Maine another
corporation of the same name with the same amount of capital stock, which was
issued to its stockholders in exchange for their shares, that the officers were sub-
stantially the same, that the business to be carried on was the same, and that
the South Dakota corporation transferred all its property to the Maine corpora-
tion and assigned to it the lease made by the defendant, but that the existence
of the Maine corporation and the assignment purposely were concealed from the
defendant, that thereafter the agreement of modification was drawn purporting
to be made by the parties to the lease and its execution was authorized by a
vote of the directors of the South Dakota corporation, whereupon it was ex-
ecuted for and in behalf of the Maine corporation by the person who was
president of both companies.    The officers of the Maine corporation intended
the defendant to believe that the agreement was executed by the South Dakota
corporation, the original lessee, and the defendant executed the agreement,
believing and having reason to believe that it was an agreement with the South
Dakota corporation.    The assignment to the plaintiff was from the Maine
corporation.    *Held,* that the minds of the parties never met as to the alleged
agreement of modification and that it never was made.

If a corporation conveys all its property and assets to a new corporation of the
same name organized under the laws of a different State, which assumes all the
liabilities of the first corporation, and if the new corporation has the same stock-
holders, officers and agents as the first one and carries on the same business at
the same place in the same manner and under the same management, the two
corporations have separate and distinct existences, being subject to different
laws, and are not the same person at law or in equity.

In a suit in equity to enforce an agreement assigned to the plaintiff by a certain
corporation, which was executed and intended to be made with the defendant
by the plaintiff's assignor when the defendant was ignorant of the existence
of that corporation and by reason of the fraudulent concealment of the truth
by the plaintiff's assignor believed that he was making an agreement with
another corporation of the same name organized under the laws of a different
State, acts of the defendant, based upon the same erroneous belief, recognizing
the plaintiff as the assignee of the agreement and permitting the plaintiff to

incur expense relying upon the validity of the agreement and in expectation of its fulfilment, do not estop the defendant from setting up the defense that he never made the alleged agreement with the plaintiff's assignor.

In a suit in equity to enforce an alleged agreement to furnish to the plaintiff refrigeration, steam, electricity and water, if it appears that there was an expectation of both parties that these things would be furnished by the defendant to the plaintiff upon terms mutually satisfactory, that there were some negotiations toward this end, and that the plaintiff relying on such expectation and negotiations incurred great expense, this does not estop the defendant from maintaining the defense that no contract ever was made between the parties.

BILL IN EQUITY, inserted in a common law writ in the Superior Court, dated July 12, 1910, and amended on June 30, 1911, for the specific performance of the provisions of a lease in writing of a slaughter house and other premises made by the defendant to the Batchelder & Snyder Company, a corporation organized under the laws of South Dakota, dated October 30, 1907, as alleged to have been modified and extended to other slaughter houses and buildings by an agreement of February 29, 1908, the plaintiff being alleged to be the assignee of said lease and agreement from the Batchelder & Snyder Company, a corporation organized under the laws of the State of Maine, which was alleged to have been formed by a reorganization of the South Dakota corporation of the same name and to have succeeded to all its property and rights. The bill contained also a prayer for damages.

In the Superior Court the case was referred to Homer Albers, Esquire, as master, under an order directing him to report his findings with such facts and questions of law as either party might request, and also directing him to report the evidence taken by him. Later the case came on to be heard before *Pierce*, J., for a final decree on the evidence taken and reported by the master, the master's findings and report of the facts, and the exceptions thereto. The judge reserved and reported the case on the evidence, the master's report, the exceptions thereto and all questions of law therein, for determination by this court.

*F. H. Nash,* (*A. P. Hardy & R. A. Stewart* with him,) for the plaintiff.

*H. D. McLellan,* for the defendant.

SHELDON, J. The most important question raised in this case is whether the plaintiff can enforce against the defendant the agreement purporting to be made between the defendant and the Batchelder & Snyder Company, dated February 29, 1908, for

the purpose of amending, modifying and extending the lease given by the defendant to one of the Batchelder & Snyder Companies under date of October 30, 1907. The plaintiff claims that it is the assignee of the lease and of this modifying agreement, and that it has the right to enforce the agreement against the defendant.

On or about October 30, 1907, the defendant gave to the Batchelder & Snyder Company, a corporation organized under the laws of South Dakota, a lease for a term of years of a slaughter house and other premises, including three refrigerators, for a rent therein stated. In this lease the defendant agreed also to furnish the necessary refrigerating pipes for properly cooling these refrigerators and to supply to the lessee on stated terms refrigeration for these refrigerators and "all the hot and cold water, steam and electricity needed in said lessee's business on the described premises." The lessee, the South Dakota corporation, entered into possession under the lease. On or about February 7, 1908, the parties who were interested in the South Dakota corporation, the lessee, caused to be organized under the laws of Maine another corporation, also named the Batchelder & Snyder Company. With some small differences, apparently adopted to comply with the laws of Maine, the officers of the Maine company were the same as those of the South Dakota company; the business to be carried on was the same; the stockholders were the same, the stock of the new company being issued to the stockholders of the old company in exchange for their shares. The South Dakota company transferred all its property and on or about February 28, 1908, assigned the lease in question to the Maine company; and, as the master has found, "these two corporations and their stockholders and officers understood that . . . the Maine corporation had become the possessor and owner of all property and rights of the South Dakota company, together with all of its liabilities and obligations." The Maine company now took possession of the demised premises. But the defendant and all its officers and agents were wholly ignorant of the change and of this assignment, not learning of them at all until some time after the bill had been brought, and supposed that they were still dealing with the South Dakota company. Indeed, we are of opinion upon the facts found by the master that the change and the assignment purposely were kept hidden from the defendant. This necessary inference we are of course at

liberty to draw.  *M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394, 397.  The effect of these transactions was to strip the South Dakota company of all its assets and to stop it from doing any further business, although the Maine company had purported to assume its liabilities.  And this, as we have seen, was concealed from the defendant.

After this, on or about February 29, 1908, the modifying agreement was made.  It recited the lease given by the defendant to the South Dakota company, and purported upon its face to be made between the parties to that lease.  By vote of the directors of the South Dakota company, its president was authorized "to sign for the corporation" the original lease to that corporation of October 30, 1907, which had been executed some time before, and already, as we have seen, had been assigned to the Maine company, "and the amendment to such lease dated February 29, 1908."  Batchelder, the president of both companies, did execute this amendment or modifying agreement, and appears to have had from the Maine company no express authority to do so.  But the seal of the Maine company was affixed to the agreement.  The master has not found by which of the two companies it was executed.  He has found that the defendant thought and had reason to believe that it was executing this agreement with the South Dakota company.  But the parties who were or had been interested in the South Dakota and the Maine companies contemplated at this time doing business under the charter of the Maine company only, though they kept the charter of the South Dakota company alive.  And they then intended that the modifying agreement should be effective and binding upon the company which was to continue the business, that is, the Maine company.

The counsel for the plaintiff has earnestly and powerfully argued that the modified agreement was properly executed by the defendant and the Maine company and is valid and binding upon the defendant, and that the lease and this agreement have vested in the plaintiff by assignment from the Maine company.  The master has declined to find, as he was requested by the defendant to do, that the defendant and the Maine company did not enter into this modifying agreement.  He has not found precisely and exactly what was the fact as to this question; and this failure has somewhat embarrassed us.  But upon a careful examination both of

his report and of the evidence we are convinced that it was the Maine company which executed it and which intended to execute it, though intentionally concealing this from the defendant, whose officers and agents believed and were intended by those who were acting for the Maine company to believe that the agreement was made and executed by the South Dakota company, the only tenant under the lease of which the defendant then had any knowledge. Whether the defendant would have made such an agreement with the Maine company of course cannot be known. It is enough to say that the minds of the nominal contracting parties never met, and the agreement never has had any validity. It was not an agreement made by the defendant with a person then present, but under some mistake as to the identity or character of that person, in which case it might have been merely voidable and good until avoided, like the bargain first considered in *Edmunds* v. *Merchants' Despatch Transportation Co.* 135 Mass. 283. Here the defendant's agreement was expressed to be with the South Dakota company; but there were before the defendant two companies, that of South Dakota and that of Maine, both acting through Batchelder, but only the first one being known to the defendant, and not only the presence but the very existence of the second being kept from its knowledge. There was no agreement with the South Dakota company, because that company intended to make none, and did not execute the paper in which the purported agreement was embodied; none with the Maine company, because there was no intention to contract with it; it was not mentioned as a party to the agreement, and could no more gain the rights of a party by a surreptitious and really fraudulent execution thereof than, for example, the present plaintiff could have entitled itself to the estate created by the original lease if, without the knowledge and consent of the defendant, it had executed that lease as then drawn, while leading the defendant to suppose that the execution was really by the South Dakota company, the lessee therein named. No agreement can result from such a transaction so carried out. *Rodliff* v. *Dallinger*, 141 Mass. 1. *Consumers' Ice Co.* v. *Webster, Son & Co.* 53 N. Y. Supp. 56; 32 App. Div. (N. Y.) 592. *Boulton* v. *Jones*, 2 H. & N. 564. *Hardman* v. *Booth*, 1 H. & C. 803. *Hollins* v. *Fowler*, L. R. 7 H. L. 757. *Cundy* v. *Lindsay*, 3 App. Cas. 459; 2 Q. B. D. 96, reversing *S. C.* 1 Q. B. D.

348. *Baillie's case,* [1898] 1 Ch. 110. *Gordon* v. *Street,* [1899] 2 Q. B. 641. This case differs essentially from those cases in which there was a real contract, though entered into by mistake or even produced by fraud. *Stoddard* v. *Ham,* 129 Mass. 383. *Hunter* v. *Giddings,* 97 Mass. 41. *Rayner* v. *Grote,* 15 M. & W. 359. *Schmaltz* v. *Avery,* 16 Q. B. 655.

But it has been argued that the substitution of one company for the other made no real difference; that the defendant had no reason to prefer one to the other; that it would as readily and as willingly have contracted with the Maine company as with that of South Dakota. Perhaps it would have been so, though perhaps it might have made a difference if the agreement had turned out unfortunately for the other side and the defendant had sought to enforce it. But the real point is that the defendant, though willing and ready to contract with the one company, its lessee, yet made no agreement with either; and we cannot enforce against the defendant an agreement which it never made.

The claim has been made also that it is only in a technical sense that these two companies could be called distinct entities. They had the same capital stock and practically the same stockholders, officers and agents; the Maine company had taken over all the assets and assumed all the liabilities of the other, and was carrying on the same business, at the same stand, in the same manner and under the same management. The master has found that for practical purposes the two companies were the same. Accordingly the plaintiff contends that an agreement with the one is the same as an agreement with the other, that the defendant's ignorance of their separate identity was immaterial, that the agreement may be treated as made with either company indifferently, was capable of enforcement by either or at least by the Maine company, and is valid in the hands and for the benefit of the plaintiff. But we cannot assent to this reasoning. These are two distinct corporations, created by the laws of two different States. The powers of each corporation are limited and controlled by the statutes of the State which created it, and it is scarcely conceivable that the statutes of the two States are the same or that the franchises and powers of the two corporations are identical. But if this were so, it would remain true that they are the creation of two different governments, the offspring of different parents, and

not only distinct legal entities, but having separate and distinct existences. They could and did make contracts with each other; they might bring suits against each other. They are in no respect the same person. This is the basis of our decision in *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, and *Myott* v. *Greer,* 204 Mass. 389. See also *New York Bank Note Co.* v. *Hamilton Bank Note Engraving & Printing Co.* 180 N. Y. 280, overruling *S. C.* 28 App. Div. (N. Y.) 411; *Wooster* v. *Crane & Co.* 3 Buch. 22; *Niagara Fire Extinguisher Co.* v. *Hibbard,* 179 Fed. Rep. 844; *Jordan Marsh Co.* v. *Beals,* 201 Mass. 163. Cases of the change of state into national banks under the federal statute are distinguishable. *Atlantic National Bank* v. *Harris,* 118 Mass. 147. *City National Bank* v. *Phelps,* 97 N. Y. 44. *People's National Bank* v. *Commissioners of Kingfisher County,* 24 Okla. 145. The case of *Andres* v. *Morgan,* 62 Ohio St. 236, stands alone so far as we have seen, and we are not disposed to follow it. This question did not arise and was not considered in *Pope* v. *Hinckley,* 209 Mass. 323. In *Forbes* v. *Thorpe,* 209 Mass. 570, 580, it was taken for granted that a corporation was a distinct legal entity from a partnership of which it was a reorganization.

It is contended however that the defendant has waived its defense that the modifying agreement is invalid in the hands of the plaintiff and has estopped itself from making this defense by recognizing the plaintiff as the assignee of the lease and the agreement, and permitting the plaintiff to incur great expense on the faith of the agreement and in reliance upon its validity and expectation of its fulfilment. The findings of the master tend to support this contention. But it cannot be maintained. All this conduct of the defendant grew out of and was based upon its belief that it had made a valid agreement with the South Dakota company, a belief which was wholly erroneous and was caused by the Maine company's fraudulent concealment of the truth. The plaintiff claims only under the latter company, and has only its rights. For the same reason the reference to arbitration can, as to this, have no more effect than the pretended modifying agreement upon which it is based. The arbitrators were not to determine and did not undertake to determine the question of the defendant's obligation to furnish refrigeration, steam and electricity to the plaintiff, but merely as to future matters to fix the cost, price and mode of

measuring the amount thereof. The plaintiff is doubtless the assignee of the original lease, and the defendant has recognized it as such; but that is all. Moreover the evidence as to what has been done goes no further than to show an expectation of both parties that refrigeration, steam, electricity and water would be available and would be supplied by the defendant to the plaintiff upon terms mutually satisfactory. Taken by themselves, as under the circumstances of this case these facts must be, they show nothing more than this expectation and some negotiations toward carrying it out. Expectations and negotiations fall far short of a binding agreement. *Smith* v. *Gowdy,* 8 Allen, 566. *Lincoln* v. *Erie Preserving Co.* 132 Mass. 129. *Ashcroft* v. *Butterworth,* 136 Mass. 511, 514. *Cheney Bigelow Wire Works* v. *Sorrell,* 142 Mass. 442. *Cummings* v. *Perry,* 169 Mass. 150, and 177 Mass. 407. *Shady Hill Nursery Co.* v. *Waterer,* 179 Mass. 318. *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333. *Chicago & Great Eastern Railway* v. *Dane,* 43 N. Y. 240. *Moulton* v. *Kershaw,* 59 Wis. 316. In *Carpenter* v. *Pocasset Manuf. Co.* 180 Mass. 130, the defendant's recognition of the plaintiffs was not made under a pretended but really non-existent agreement or induced by any wrongful act of the plaintiffs or their assignee.

We need not consider whether under the circumstances here found the defendant could in equity elect to treat the modifying agreement as made by either the South Dakota or the Maine company and as enforceable against the plaintiff. The defendant has made no such election, and it is of no consequence to determine what its effect would have been if made.

There is no occasion to discuss the exceptions taken by the defendant to the master's report, or some other questions which have been argued in behalf of the plaintiff. Upon the facts found by the master and the findings which we are compelled to make from those facts and the evidence reported, the bill cannot be sustained, and under the terms of the reservation must be dismissed with costs.

*So ordered.*