Rockingham,
No. 4924.

EXETER MANUFACTURING COMPANY

*v.*

GLASS-CRAFT BOATS, INC.

Argued June 6, 1961.

Decided September 14, 1961.

388

*George R. Scammon* and *John B. Ford* (*Mr. Ford* orally), for the plaintiff.

*Green, Green, Romprey & Sullivan* and *Herman E. Klein* (of Illinois) (*Mr. Samuel Green* orally), for the defendant.

BLANDIN, J. The vital questions submitted to the Court and which it has answered in the affirmative subject to the plaintiff's exception as to the second one, are:

(a) "Did Exeter Manufacturing Company . . . believe and intend that it was selling goods to the U. S. Government?

(b) "Did Glass-Craft Boats, Inc. purchase without notice of the fraudulent intent of their immediate creditor or the fraud of the grantor?"

While the Court in answer to the first question posed by counsel found that the plaintiff had an intent to sell the goods to the United States Government, it found by its verdict and by its specific ruling that a voidable title passed under applicable New York law, that the plaintiff's primary intent in making the sale was to pass title to National Procurement. *Phelps* v. *McQuade,* 220 N. Y. 232.

These findings are not inconsistent. As correctly stated in the plaintiff's brief, in such situations as the present where fraud is instrumental in obtaining goods, the seller "intends several things" and since "all these intents cannot be effected," the question becomes one of the seller's primary intent. 3 Williston, Sales (Rev. *ed.*) s. 635. This is to be determined upon the facts of each case. *Phelps* v. *McQuade, supra.* Therefore the issue before us is whether the record supports the Trial Court's finding that the plaintiff's primary intent was to pass title to Charles E. Leggett, duly registered in New York State as doing business under the trade name of National Procurement.

It appears that J. Eleveld, who apparently conferred the title of Colonel upon himself and concerning whose authority to act for National Procurement no serious question is raised, negotiated by telephone with a representative of the plaintiff for the cloth goods in question and signed the purchase order to the plaintiff for National Procurement. Here Eleveld, although not transformed into a gentleman or officer by an act of God, Congress or otherwise, represented an admittedly existing concern operating under the trade name of National Procurement. With this concern, through its agent Eleveld, the plaintiff dealt directly by telephone. The law is settled that where one deals with another face to face and purports to sell goods to him, a voidable title passes even though fraud, such as existed here, is instrumental in obtaining the property. *Phelps* v. *McQuade, supra;* Restatement, Contracts, *s.* 475, ill. 6; 3 Williston, Sales (Rev. *ed.*) *s.* 635 When the means of communicating is by telephone it has been authoritatively stated that the transaction is to be treated as though the dealings were face to face. Restatement, Contracts, *s.* 65. We hold this rule to be applicable here.

In all the circumstances, it appears the Court's finding that the plaintiff's primary intent was to pass title to National Procurement, even though the latter was a different sort of organization from what the plaintiff believed it to be, is sustainable.

This case differs from authorities cited by the plaintiff, such as *Collins* v. *Ralli,* 20 Hun 246 (N. Y.). There a broker falsely represented to the seller that he was authorized to purchase for certain concerns, and he bought goods purportedly for these concerns. Actually he had no contact with them and they knew nothing about the transaction. Here the concerns got no title because they never agreed to buy, and the broker got none because the sellers never agreed to sell to him. The Court properly ruled to this effect.

From what has been said, it follows that National Procurement got a voidable title to the goods and the plaintiff's exception to the Court's so holding is overruled. *Phelps* v. *McQuade, supra;* 3 Williston, Sales (Rev. *ed*) *s.* 635.

A further question posed in the words of the plaintiff's brief is whether defendant has proven a chain of title running to itself. The Court has ruled without exception that the burden of proving that it acquired title to the goods by a proper chain of transfer is upon the defendant and in order to determine if this ruling can be sustained, it is necessary to examine the facts in some detail.

As previously stated, no question is presented as to the authority of J. Eleveld to represent Charles Leggett, d/b/a National Procurement. It appears that the alleged transfer from National Procurement to National Procurement Distributing Co. and from the latter to Dunwood, Agent, is evinced among other circumstances by an instrument which on its face is an "original invoice" bearing the date August 15, 1958. Payment in full is acknowledged by the stamp of National Procurement, reading: "National Procurement paid in full. September 15, 1958. Thank you." On the same instrument beneath the printed word "Approved" is the signature of J. Eleveld and under this is printed "Director National Procurement and Distributing Corp." Also in the center of the invoice are the typed words: "Total shipment delivered to Mr. Joseph Dunwood or his agent at McLane & Taylor warehouse Manchester, N. H. . . . 8/15/58." At the bottom of the sheet, beneath a printed acknowledgment that "the merchandise . . . has been received & complies with our Specification . . . " is the written signature of Joseph Dunwood.

The alleged transfer from Dunwood, Agent, to the defendant is evinced by a communication enclosing the warehouse receipt upon the letterhead of "Acme Ltd . . . Zurich, Switzerland," addressed to McLane & Taylor and reading as follows: "Dear Sir: This letter with the inclosed warehouse receipt . . . is your authority to release to Mr. E. A. Juzwik or his agent, the . . . cloth held under the aforesaid receipt. In the event the storage . . . goes beyond September 14, 1958, Mr. E. A. Juzwik will assume the additional storage cost. A copy of this letter under separate cover is being sent to you. The original copy along with the warehouse receipt will be forwarded to you by Mr. Juzwik together with his shipping instructions. Very truly yours, Acme Ltd. [Signed] Joseph Dunwood, Agent."

In addition to this evidence, there is the testimony of Frank L. Juzwik, President of Glass-Craft and the brother of E. A. Juzwik mentioned in the letter, who was Vice-President of the company, of a fairly long previous course of dealing with Acme, Ltd. through Dunwood as alleged agent of Acme. The nature of these dealings had been that Leggett, d/b/a National Procurement, would contact E. A. Juzwik, who would buy the goods for the defendant from Acme, and then the defendant would reimburse him. On the present occasion, owing to the fact that E. A. Juzwik was away, Leggett dealt with Frank Juzwik, who had the orders for delivery run to his brother in accordance with past custom.

The record also discloses that the relationship between Leggett, National Procurement Distributing Company and Dunwood, acting for Acme, was very close. Indeed, Eleveld, who negotiated for National Procurement in buying the cloth from the plaintiff and who signed the self-styled original invoice of National Procurement, worked with Leggett in such perfect harmony in consummating the several transfers and accepting the benefits therefrom, that they are both presently serving jail sentences for fraud as a reward for their efforts.

The documents involved are all regular in appearance, they were admitted by agreement of counsel to be "used for all purposes" and there is no evidence of any contradiction of their terms or any inconsistent dealings with the property involved. They are therefore relevant to show the alleged transfers and the authority of the signers to act for their respective organizations. American Law Institute, Model Code of Evidence, s. 527(b). See *Gagnon* v. *Pronovost*, 97 N. H. 500, 502.

Bearing in mind all the foregoing circumstances, including the regular appearance of the documents, the absence of contradicting evidence, the previous course of dealings between the parties, their close relationship, and the acceptance of the benefits of the transactions on the present occasion, we believe the Court's finding that the defendant has established a valid chain of title from National Procurement to it is warranted. It follows the plaintiff's exception thereto is overruled.

The plaintiff says, however, that even assuming *arguendo* that a voidable title was vested in Dunwood, as agent of Acme, his letter of August 16 and the accompanying warehouse receipt, both of which were sent to the warehouseman, do not meet the requirements of the Uniform Warehouse Receipts Act. The material portions of the law in force in the state of Illinois are as follows: "A receipt which is not in such form that it can be negotiated by delivery may be transferred by the holder by delivery to a purchaser or donee. A non-negotiable receipt cannot be negotiated, and the endorsement of such a receipt, gives the transferee no additional right." Ill. Rev. Stat., c. 114, s. 271.

"A person to whom a receipt has been transferred but not negotiated, acquires thereby, as against the transferor, the title to the goods, subject to the terms of any agreement with the transferor. If the receipt is non-negotiable such person also acquires the right to notify the warehouseman in writing of the transfer to him of

such receipt, and thereby to acquire the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt. Prior to the written notification of the warehouseman by the transferor or transferee of a non-negotiable receipt, the title of the transferee to the goods and the right to acquire the obligation of the warehouseman may be defeated by the levy of an attachment or execution upon the goods by a creditor of the transferor, or by a notification in writing to the warehouseman by the transferor or a subsequent purchaser from the transferor of a subsequent sale of the goods by the transferor." Ill. Rev. Stat., c. 114, s. 274. (See the corresponding sections of our Act, RSA 335:39, 42).

Our law relating to the requirements of physical delivery of the goods by a warehouseman states that they may be delivered to (a) "The person lawfully entitled to the possession of the goods, or his agent; (b) A person who was either himself entitled to delivery by the terms of a non-negotiable receipt issued for the goods, or who has written authority from the person so entitled either indorsed upon the receipt or written upon another paper . . . . " RSA 335:9.

In the face of these provisions, we do not believe the plaintiff's position that the letter from Dunwood and accompanying warehouse receipt fails to meet the requirements for a valid transfer to Glass-Craft is well taken. The letter and receipt from Dunwood to the defendant were both delivered to the warehouseman and could not reasonably be interpreted as other than a written notification to him on behalf of the defendant that the goods were transferred to "E. A. Juzwik *or his agent.*" (Emphasis supplied). This fulfills the requirements under the Illinois law and was proper authorization under the similar New Hampshire enactment for the transfer of possession and title to the defendant.

The plaintiff's contention, in effect that a bona fide purchase does not cut off pre-existing equities, requires no extended consideration. 77 C.J.S., Sales, s. 295(f); 5 Williston, Contracts (Rev. ed.) s. 1531, p. 4297. Cases which might appear to indicate a contrary view depend on the proposition that there was no valid change of possession in regard to the disputed goods. It is conceded by the plaintiff here that if the warehouseman is properly notified in writing of the transfer to the transferee, a change of possession occurs. In this case we have held that proper notification was given under both Ill. Rev. Stat., c. 114, s. 274 and RSA 335:42, which disposes of the plaintiff's claim.

A further contention of the plaintiff is that under the New Hampshire Sales in Bulk statute (RSA ch. 340) or under Ill. Rev. Stat., c. 121½, s. 78, the transfer is void because certain required notices to creditors were not given. No authority is cited for this proposition that such statutes are applicable to transactions similar to the present, which come under the Uniform Warehouse Receipts Act, and we know of none. See anno. 168 A.L.R. 762, 768. There is nothing in the statutes which lends force to the plaintiff's claim, and the impracticality of encumbering the transfer of goods in warehouses by such conditions is obvious. We hold, therefore, that neither RSA ch. 340 nor Ill. Rev. Stat., c. 121½, s. 78 apply here.

Finally, no valid argument can be made that the sale was invalid under Ill. Rev. Stat., c. 59, s. 4, which holds every transfer made with the intent to hinder creditors shall be void. Section 5 of the same statute provides that section 4 is inapplicable where there has been a bona fide purchaser for value. This appears to dispose of all issues raised, and the order is

*Judgment on the verdict.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting:* Since the Trial Court found that the plaintiff "believed and intended that it was selling the goods to the United States Government," no title could pass to Eleveld or National Procurement, the purported sale was void, and title to the goods was in the plaintiff on the date of the replevin action. 3 Corbin, Contracts 616; 3 Williston, Sales 447; *Rodliff* v. *Dallinger*, 141 Mass. 1. See *Phelps* v. *McQuade*, 220 N. Y. 232, 236. The bailor of the goods had no title to transfer by means of the warehouse receipt, even if it could be found that the Illinois statute (Ill. Rev. Stat., c. 114, s. 274) was complied with in the transfer. *Rodliff* v. *Dallinger*, *supra*, 6. See 93 C.J.S. 433, Warehouseman & Safe Depositaries, s. 27.

The ruling that when the action was brought the defendant "had a better title to the goods than" the plaintiff was inconsistent with the consequences which follow as a matter of law from the express finding, and in my opinion the verdict should be set aside.