JOSIAH CUMMINGS & another *vs.* ALONZO W. PERRY.

Suffolk.   November 21, 22, 1900. — January 3, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

Assuming that under some circumstances an absolute duty to run an elevator in a building, or a qualified duty to allow the use of it while run, may be implied in favor of a tenant who holds under a written lease without any provision on the subject, it was *held*, that no such duty could be implied from the facts appearing in this case, and that nothing was shown to take the case out of the former decision, reported 169 Mass. 150.

CONTRACT, for breach of an implied covenant in a lease of certain premises in Boston.   Writ dated December 31, 1892. The case was first tried in the Superior Court, before *Bond*, J., and the jury returned a verdict for the plaintiffs.   The exceptions of the defendant were sustained by this court, and the

decision is reported in 169 Mass. 150. On the second trial of the case in the Superior Court, before *Lilley*, J., the jury again returned a verdict for the plaintiffs. The defendant's exceptions were allowed by *Fessenden*, J., after Judge *Lilley's* resignation.

By the bill of exceptions it appeared, that the plaintiffs were lessees, and the trustees of the Boston Real Estate Trust were lessors, of certain premises in a building known as Church Green, at the corner of Summer and Bedford Streets, in Boston, under a five years' lease bearing date December 28, 1887, and beginning on the first day of January, 1888. The leased premises included the basement room of the building, also rooms 29 and 30 on an upper floor. The lessors reserved the right to terminate this lease as to the rooms 29 and 30 on the first day of January, 1890, by giving the lessees due notice.

The Boston Real Estate Trust assigned this lease to the defendant on March 1, 1888, and thereafter the defendant collected the rents and stood in the place of the lessors. In accordance with the terms of the lease, the plaintiffs entered upon the occupation of the premises and continued in occupancy and possession until January 1, 1890, when their tenancy of rooms 29 and 30 was terminated by the defendant in accordance with the terms of the lease, and possession thereof yielded up by the plaintiffs, who continued to occupy the basement room until the expiration of their term.

The plaintiffs contended that the defendant had unlawfully deprived them of the use of an elevator on the premises. In the decision reported in 169 Mass. 150, it was held, that upon all the evidence recited in the bill of exceptions then before the court, the presiding justice should have ruled, that the plaintiffs showed no right to use the elevator after their tenancy of rooms 29 and 30 had been terminated, and no right to use it at any time for the purpose of hoisting goods to the sidewalk from the basement room, or of lowering them from the sidewalk to the basement room, and the defendant's exceptions were sustained on that ground. The plaintiffs contended that their additional evidence, given at the new trial and set forth in the present bill of exceptions, entitled them to the rights denied them by the former decision. The character of the additional evidence relied on is described in the opinion of the court.

The defendant requested the presiding judge to rule, that on all the evidence the plaintiffs were not entitled to recover. This ruling was refused and the defendant excepted.

Many other rulings were requested by the defendant and refused by the judge, but the decision of the court makes them immaterial.

*A. Hemenway*, (*J. W. Allen* with him,) for the defendant.

*R. M. Morse*, (*D. F. Kimball* with him,) for the plaintiffs.

HOLMES, C. J. This is an action of contract upon a lease, for depriving the plaintiffs of the use of a freight elevator in connection with a basement room demised. No right to the use is conferred by the lease in terms. On the contrary a clause in an earlier lease to the first named plaintiff and the rest of his firm as then constituted, which ran for the four years immediately preceding and which gave that right for a certain purpose, was omitted from the present instrument. Therefore the contract relied on has to be implied from the circumstances, and we naturally begin by asking exactly what it is.

The declaration is somewhat guarded and does not commit the plaintiffs, but we understand that they do not go so far as to say that there was an implied undertaking to run the elevator during the term, but only that there was one to allow them to use it so long as the lessors should see fit to run it. By giving the supposed covenant this form the plaintiffs avoid the difficulty in the way of implying the assumption by the landlords of an active and expensive duty without a word said in the lease, but they encounter the alternative one in the way of an implication so much more complex and subtle than those familiar to the law. For it is a very subtle construction that admits the landlord's right to stop the elevator at any moment and yet finds implied a duty not to stop the use of it without also stopping the elevator. A more natural construction would be that if any right was given to the tenants by implication, inasmuch as it rested on a state of things wholly dependent upon the landlord's will, the right also depended upon that will and was no more than a revocable license. Whether on the facts the plaintiffs would not have to put their claim somewhat higher than as we have stated it need not be considered.

The case has been before the court already, and it has been

decided that the plaintiffs have not the right which they claim. 169 Mass. 150. The facts concerning the leases and the language of them, so far as material, are set forth in the earlier decision. But the plaintiffs think that at the second trial they showed a state of facts so materially different that they properly were allowed to go to the jury on the question whether the right was incident to the lease of the basement as reasonably necessary for the use of it. The difference relied on is that, whereas it was assumed before that "as the building was originally constructed it was plainly not intended that the elevator should be used for hoisting goods from the basement room to the sidewalk of the street, or for lowering goods from the sidewalk to the basement room," now it appears that, as the building originally was constructed, it was intended that the elevator should be used for the purposes described.

We are of opinion that nothing has been shown sufficient to take the case out of the former decision. It is true that when the building was put up the elevator was used by tenants in connection with the basement for three years, from 1873 to 1876. During this tenancy the basement had no direct connection with the street. There was a stairway to it from the first floor, and an opening to the elevator, and that was all. But after the tenancy ended the basement was remodelled in 1877 and turned " into store property substantially," in the language of the only witness. The floor was raised two feet, two doors to the street were put in on the two sides of the main entrance to the building, and the opening in the brick partition wall between the basement room and space kept by the lessors, was bricked up. This was the opening from the basement room to the elevator. To quote the witness again, " It was then made into a finished basement with ample light, and doors out on to the street, and shut off entirely from the elevator," and this state of things continued for six or seven years.

For all practical purposes as towards these plaintiffs, this was the original construction of the building, whatever may be the importance of that fact. The change was not an adaptation to the needs of a particular tenant. It was a permanent and still continuing change in the character of the room. This altered construction was that which presented itself to the first named

plaintiff's eyes when he contemplated hiring the place. Then came the first lease to his firm, with express provisions for making an opening to the freight elevator and for the use of the elevator by the lessees for a certain narrowly specified purpose, not including that for which it now is claimed. The purpose was " bringing their finished goods from the two upper chambers of the adjoining estate which they are expecting to occupy for manufacturing purposes." There were changes in the title to the reversion and in the plaintiff's firm, and then the present lease was made. The lease was of " the basement room " which it appears expressly from the bill of exceptions did not include the space beyond the partition wall where the freight elevator was, and the elevator was not mentioned. It appears that the plaintiffs' goods could be and were brought in through the doors and windows, and that after they lost the use of two upper rooms under the terms of the lease the basement was turned into a manufacturing or packing room rather than a store.

It is not necessary to go more at length into the facts and to repeat what already has been said once by the court. We assume, as was assumed before, for the purposes of decision, that under some circumstances an absolute duty to run an elevator or a qualified duty to allow the use of it while run may be implied without express words, notwithstanding the existence of more old-fashioned modes of access. We also assume without deciding that as between landlord and tenant the burden of such a covenant would pass with the reversion. *Jones* v. *Parker*, 163 Mass. 564, 568. But taking into account principles of construction settled in this State with regard to implied grants or covenants, the position of this elevator with regard to the space let, the language of the former lease and the silence of this one, we are of opinion that no such duty was implied in the present case, and that the use of the elevator during the former demise and the first part of the present one, with or without the knowledge of the landlords, for carrying goods between the basement and the street does not change what otherwise would be the interpretation of the lease.

The view which we take of the plaintiffs' rights makes it unnecessary to consider the rulings as to damages, which otherwise would have required serious consideration.

*Exceptions sustained.*