MORRIS I. HALPERIN, Appellant, *v.* McCRORY STORES COR-PORATION, Respondent.

Second Department, December 14, 1923.

**Landlord and tenant — action to restrain landlord from cutting off heat and elevator service in building during night time — original and renewed leases provided for such heating as heating plant would supply — original landlord furnished heat at night — practical construction of lease by parties shows that plaintiff had right to heat and elevator service at night.**

A tenant is entitled to an injunction restraining a landlord from cutting off heat and elevator service .during the night time in a building used by the tenant, where it appears that the original lease entered into between the tenant and the original landlord and the renewed leases provided that the landlord would furnish such heat to the demised premises as the plant then in operation would supply; that prior to the assignment to the defendant as landlord, heat had been furnished during the night time and the tenant had been permitted to make use of the elevator; that at certain times the tenant ran his plant continuously day and night and heat and elevator service were essential to such operation; that when the lease was renewed each time the landlord knew that the tenant was using the leased premises for night work and that heat was essential to enable him to do so.

The practical construction of the lease by the parties shows that it was the intention that the tenant should be supplied with heat and elevator service at night, and that at night the elevator should be operated by the tenant.

APPEAL by the plaintiff, Morris I. Halperin, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 19th day of February, 1923, upon the decision of the court, rendered after a trial at the Kings Special Term, dismissing the complaint upon the merits.

*Albert Conway*, for the appellant.

*John F. Collins* [*Harry S. Bandler* with him on the brief], for the respondent.

JAYCOX, J.:

The plaintiff brought this action to enjoin the defendant from cutting off the heat and elevator service during the night time in certain premises occupied by plaintiff as tenant. Plaintiff uses the premises for manufacturing purposes. The defendant is the landlord. The Special Term decided in favor of the defendant and dismissed the complaint on the merits.

The plaintiff has occupied a portion of the building continuously since March 1, 1918. The building in question is known as 11–17 Bond street and 16–20 Hanover place, borough of Brooklyn, city of New York. His present lease expires May 31, 1924, and contains an option to renew for two years thereafter. The first lease was made on or about the 29th day of January, 1918, between J. S. Bailey Company as landlord, and appellant as tenant, and therein the landlord let to the appellant all the unoccupied part of the seventh floor of the said building extending along the Hanover place front thereof, approximately 4,000 square feet, for the term of two years, from March 1, 1918, and ending the 29th day of February, 1920, the lease containing a covenant that the tenant should have the right to renew it for a further period of three years; thereafter and prior to June 1, 1919, the same parties made a new lease whereby said landlord leased to the appellant premises in said building described in said lease as all of the unoccupied part of the sixth floor of said building extending along the entire front of the premises on Bond street, approximately 125 feet, and being 125 feet in depth, for the term of two years, from June 1, 1919, and ending May 31, 1921, that lease containing a covenant that the tenant should have the right to renew the same for a period of one year upon the same terms and conditions; thereafter and prior to July 1, 1921, the same parties entered into a further lease whereby the landlord let to the appellant as tenant all of the sixth floor of said building for the term of two years and ten months, ending May 31, 1924, said lease containing a covenant that the appellant should have the privilege of renewing the same for an additional period of two years to end May 31, 1926, at the same rental.

Each of the leases contained the following covenant:

" The landlord agrees to furnish such heating to the demised premises as the plant at present installed will provide."

All the rights and obligations of the Bailey Company have devolved upon the defendant.

29

Plaintiff is a manufacturer of fibre silk and during the cold weather heat is necessary to enable him to carry on his business. His is a seasonal business and during his busy season the work is done by two shifts, working continuously day and night. Prior to the time the defendant acquired the building (about two years ago) ample heat was furnished to plaintiff to enable him to conduct his work day and night and he did so conduct it. This continued until the winter of 1922, when the heat and elevator service were cut off by the landlord (the defendant) at night.

At the time that the three leases to plaintiff were made there was installed in the building a combination heating and sprinkler system. During all the time this system was in operation heat was furnished to plaintiff during the night as well as the day. The defendant claims, and the court has found, that the heat furnished to the plaintiff at night was not intentionally furnished but was the result of keeping the water warm in the sprinkler pipes and that this was necessary with the heating system then in use. The court has also found:

" 17. The only means of heating said premises upon the sixth floor of said building is from a central plant situate in the basement or cellar of said building, and over which the defendant has sole and exclusive control, and that the power to operate the elevators that give access to said sixth floor is also under the control of the defendant.

" 18. That continuously since March 1st, 1918, and to the month of October, 1922, heat in said building was supplied by a combination sprinkler and hot water heating system.

" 19. That the said sprinkler and hot water heating system was the plant installed in the basement or cellar of the building in which the demised premises are situate at the time the leases set forth in findings 2nd, 3rd and 4th were entered into."

For the purpose of discussing what seems to be the first question involved, no other facts are necessary.

The leases all provided that " the landlord agrees to furnish such heating to the demised premises as the plant at present installed will provide." If this action were brought under the first lease to compel the landlord to furnish heat at night, I think it would then be a question to be determined from the construction of this clause of the lease, whether heat was to be furnished at night or not. But I think the course of dealings of the parties has changed the question, to some extent at least. It is undisputed that when the lease was renewed each time the landlord knew that the tenant was using the leased premises for night work; that heat was essential to enable him to do so, and that the plant at that time installed

was providing it. The lease then made must be construed in the light of the surrounding circumstances. Waiving the question of practical construction and considering only the construction of the lease in view of the surrounding circumstances, was not the lessee justified upon a renewal in believing that under the new lease he would be entitled to receive the same amount of heat and during the same hours he had under the former lease? The heating plant was the same. There was nothing to warn the lessee that any change was anticipated and, in fact, no change was contemplated.

" In the construction of contracts, where there is no ambiguity, it is the duty of the court to determine their meaning. Moreover, where the terms and language of the contract are not disputed, its legal effect is a question of law to be determined by the court. It is always the duty of a court, in construing a written instrument, if possible, to ascertain the intention of the parties * * *.

" If this contract is to be regarded as somewhat indefinite or ambiguous, we may resort to the surrounding facts and circumstances as they existed when it was made to aid us in its interpretation and also consider the practical construction which the parties have given it. Its interpretation by them is a consideration of importance. As was said by SWAYNE, J., in *Insurance Co.* v. *Dutcher* (95 U. S. 269, 273): ' The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done.' (*Woolsey* v. *Funke*, 121 N. Y. 87.) " (*Sattler* v. *Hallock*, 160 N. Y. 291, 297, 301.)

When the lease was renewed I think each party was entitled to have and to expect to furnish heat to the same extent and of the same character as had theretofore been furnished. The intent of the parties is the controlling factor, when not illegal, in construing an agreement. What possible intent could the parties to this lease have had when they renewed it in the same terms other than that the lessee should have the same heat under the new agreement that he had had under the old. If this provision in the lease was subject to change by the installation of a new heating system it should have been provided for. The heating plant then installed furnished heat for both day and night work. If the landlord did not desire or intend to furnish such heat in the future it was his duty to inform the lessee and modify the agreement, accordingly. If notified of this change of intention, the lessee could have declined the lease or perhaps procured a reduction in rent. But he had no opportunity to do any of these things. He was led to believe that under the new lease he would receive the same as he did under the old, and in fairness and justice he was entitled to receive it.

The covenants in all the leases in relation to the elevator, in so far as the questions presented in this action are concerned, are practically alike. In the first lease the tenant was to use a different elevator from that mentioned in the later leases and it was to be used in conjunction with the other tenants. The covenants as to the elevator in the second and third lease are the same except as to the elevator that is to be used. The covenant in the third lease reads as follows: " The tenant shall have the right in conjunction with lessee, to use the elevator on Bond street rear of said building, and agrees to hold the landlord free of all responsibility for damages to person or property arising out of the operation of the said elevator." As to this covenant, I think it is clear that there has been a practical construction of it. The tenant from the outset has used the elevator during the day and also at night. That this was with the landlord's knowledge and consent cannot be doubted. The parties to the contract have furnished the surest evidence of its meaning by what they have done under it. (*Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273.) The practical construction placed upon a contract by the parties to it is sometimes almost conclusive. (*Nicoll* v. *Sands*, 131 N. Y. 19, 24.) As to this provision of the lease we have not only the practical construction placed upon it by the parties to the lease but we also have the surrounding circumstances in the light of which the parties contracted. If the lessee was to receive anything different under the new lease from that which he had under the old, or anything less, it was the landlord's duty to specify it. The fact that the plaintiff paid the defendant's watchman to run the elevator in no way detracts from the force to be given to the fact that plaintiff did use the elevator with the landlord's knowledge and consent. There is nothing in this conduct in any way inconsistent with the terms of the lease. In fact, it is in exact accord with the terms of the lease. The lease does not provide for furnishing elevator service nor does it provide that the plaintiff and his employees are to use the elevator or ride thereon. The use is limited to the plaintiff and he is " to hold the landlord free of all responsibility for damages to person or property arising out of the operation of the said elevator." This, I think, indicates clearly that the tenant is to operate the elevator and this construction is borne out by the conduct of the parties. This is also supported by the fact that the plaintiff was to use the elevator in conjunction with the landlord. This meant that they were to use it jointly — upon equal terms — and the lease was so construed. The landlord operated the elevator during the day and the tenant at night. This continued during all the leases, including the present one, until after the defendant

became the landlord. The provision by which the tenant was " to hold the landlord free of all responsibility for damages to person or property arising out of the operation of the said elevator " is very strong evidence that the tenant was to operate the elevator. The covenant to hold the landlord free of responsibility does not relate to this tenant's employees and property alone, but applies to all persons and property upon this elevator. The covenant cannot, I think, be construed as an agreement to insure the landlord against any claims for damages arising out of the operation of this elevator. It must be limited to claims for damages arising out of the operation of the elevator during the time the tenant operated it. This and the user under it clearly indicate that the tenant was to operate the elevator; and as the landlord operated it during the daytime, the tenant's operation necessarily must be at night.

I think every factor bearing upon the construction of this lease tends to support the plaintiff's construction. The covenant itself, the practical construction of it, and the conduct of the parties viewed as one of the surrounding circumstances in the light of which the parties entered into the lease all lead to the conclusion that the tenant was to have the use of the elevator at night.

I recommend that the judgment be reversed upon the law and the facts, with costs, and judgment be directed in favor of the plaintiff for the relief demanded in the complaint, with costs.

KELLY, P. J., RICH, MANNING and YOUNG, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment unanimously directed in favor of the plaintiff for the relief demanded in the complaint, with costs. The order entered shall provide for the necessary reversal of findings and for new findings by this court. Settle order on notice.