[No. 25030. Department Two. August 31, 1934.]

TAILORED READY COMPANY, *Appellant*, v. FOURTH & PIKE STREET CORPORATION *et al., Respondents.*[1]

*Burkheimer & Burkheimer,* for appellant.

*Wright, Jones & Bronson* and *W. L. Grill,* for respondent.

HOLCOMB, J.—This appeal is from an order denying appellant a temporary injunction requiring respondents to furnish elevator service, heat and janitor service on the second floor of a ten-story building.

The Manheimer Brothers, who had been successful clothing merchants since 1907, organized appellant corporation, and had been engaged in the clothing business on the southeast corner of Fourth avenue and Pike street, Seattle, originally renting a small corner store from George Kinnear, there being at that time a two-story brick building, 111 feet by 109.9 feet, which occupied a portion of the identical space where the ten-story Liggett building was constructed during 1926

[1]Reported in 35 P. (2d) 508.

and 1927. George Kinnear, prior to 1917, conveyed the premises to the G. Kinnear Company, a Washington corporation.

Appellant conducted a clothing business on that property, which comprised the second floor of the two-story brick building, until September, 1926. The two-story building was at no time equipped with elevators, although the first story is higher than the second. The Louis K. Liggett Company, hereinafter called the Liggett Company, built the ten-story building, with foundations to carry a fifteen-story building, and equipped the building with a system of four passenger elevators and one freight elevator, for the purpose of serving the tenants of the building. The building was also constructed with one central water system and one central heating plant designed to serve the entire building, and two stairway systems on either side of the elevators to serve the entire building, and the building on all floors was equipped with hallways to the elevator systems. Stairways and toilets were provided and constructed with access from the hallways upon each of the floors of the building for the use of all the occupants of the building and its customers.

No heating plant was ever installed in the building until the construction of the ten-story building, and appellant paid for its heat and water until then. Afterwards, the Liggett Company furnished them for about six years, and then threatened to discontinue them until compensated.

On June 17, 1926, appellant and the Liggett Company entered into a lease, as follows:

"WITNESSETH:

"That the Landlord, in consideration of the rents hereinafter reserved and the covenants hereinafter enumerated to be kept and performed by the tenant, and for other good and valuable considerations, has leased and demised and by these presents does lease

and demise unto the tenant, the following described portion of that certain building to be erected by the landlord upon lots one (1) and four (4) in block twenty (20) of the Plat of an Addition to the Town, now City, of Seattle, as laid out by A. A. Denny, . . .

"The portions of said building herein leased are as follows: The entire second floor of said building, reserving, however, to the landlord space for outside walls, supporting beams and columns, pipes, wires, shaftways, hallways, sufficient to permit use of stairways to the building, stairways, elevators and the like, as may be deemed necessary or proper by the architect having charge of construction of said building for the construction, reconstruction, or maintenance of said building. Also, space on the first floor, being the easterly twenty (20) feet of said first floor measured between the exterior and partition walls and extending backward ninety (90) feet from the southerly line of Pike Street to the partition wall, subject to such encroachments for supporting columns, architectural features and finish, pipes and wires on the walls and ceilings, as shall, by the architects having charge of the construction of said building, be deemed necessary or proper, and subject to a possible difference of three inches either way as a margin for possible error in construction.

"The tenant shall pay to the landlord as rent for the said premises during the said term of twenty (20) years the sum of one dollar ($1.00) per annum, payable annually in advance.

"This lease is intended to supplant and to take the place of a certain lease made between the same parties and dated February 1, 1926, whereby the landlord leased to the tenant the above described demised premises, and the execution and delivery of this lease shall be a complete release of the said lease dated February 1, 1926, and a complete satisfaction between the parties of any and all rights and/or liabilities arising out of said lease dated February 1, 1926. The said lease instrument dated February 1, 1926, is hereby canceled and terminated and each of the parties is hereby re-

leased from any and all covenants, agreements, obligations, and/or provisions of said lease instrument dated February 1, 1926.''

The lease referred to in that lease, so far as material, is:

''The landlord further agrees that it will, if it may be lawfully done, construct a marquee over the entrance to the first floor space hereby demised, unless such requirement shall be waived by tenant, such marquee to extend out from the building line not over eight (8) feet and shall be of iron and glass construction, glass lettering to be placed on skirting or face and marquee wired for lighting of such letters; the landlord further agrees that it will, unless waived by tenant, construct in the demised space on the first floor a stairway leading to said second floor, the floor material of said stairway and landings thereof to be of terraza. Landlord will also construct a door leading from the existing alley at the east of said premises to the space under said stairway. The tenant may, at any time during the life of this lease at its own expense and under the supervision of the landlord, remove the stairway without injury to the free-hold. The outside windows of the second floor fronting on Pike Street and Fourth Avenue shall be of plate glass and of display type.

''The landlord will also construct in the demised space on the first floor and on the stairway above referred to leading to said second floor show cases for the use of tenant and will also construct platforms and windowbacks in connection with said outside windows on the second floor fronting on Pike Street and Fourth Avenue according to plans and specifications to be submitted to landlord by tenant, such plans and specifications to be placed in landlord's hands within sixty (60) days after written notice from landlord addressed to tenant at the demised premises, at which time tenant shall elect in writing whether the stairway herein provided for is to be constructed. The combined cost of the construction of said show cases, platforms and windowbacks shall not exceed ten thousand dollars

($10,000.00), and in the event of any excess of such cost over ten thousand dollars ($10,000.00), such excess is to be paid by the tenant to the landlord upon demand; all of said construction shall be and remain a part of the freehold. . . .

"In the event landlord shall elect to furnish electricity for lighting or power to the demised premises, tenant shall purchase electricity for lighting or power for said demised premises from landlord, the landlord agreeing to charge therefor not more than the current retail rates in effect for electric service. Landlord shall not, however, be liable for any failure to supply such electric current not due to gross negligence on its part. Should landlord not elect to furnish electricity, tenant shall install, all necessary electric meters in the demised premises and pay for all current used through same; tenant also agrees not to overload the electric circuits at any time during the term of this lease, and should tenant desire any additional wiring to carry any extra load tenant will install and pay for same all such work to comply with all rules and regulations pertaining to work of this class. Landlord shall not be liable for any defect, latent or otherwise, or change of conditions resulting from any cause whatsoever, unless caused by negligence of landlord. It is further understood and agreed that landlord does not undertake to furnish service of any kind or character for the demised premises unless specifically set forth herein.

. . .

"Landlord shall, during the term of this lease, furnish without charge to tenant, steam to the heating equipment in the demised premises, when steam shall be furnished to other tenants in such building, but landlord shall not be liable for any failure to furnish such steam not due to the negligence of the landlord.

"Tenant shall have the privilege of using the elevator or elevators used for passengers and freight in such building in common with other tenants at such hours and on such days as said elevators shall be available to other tenants, but landlord shall not be responsible for the cessation of such elevator services unless due to its negligence."

The last lease was intended to, and did, supersede a lease entered into between G. Kinnear Company and appellant, dated November 25, 1919, which lease then had an unexpired term of approximately eight years. On February 1, 1926, the same date as the lease between appellant and the Liggett Company, the Liggett Company, for the purpose of cancelling the lease of November 25, 1919, which had eight years to run, at an annual rental of one dollar, entered into the new lease. The principal consideration for the new lease was the cancellation of the lease of November 25, 1919, so that a ninety-nine year lease could be negotiated between the Liggett Company and G. Kinnear Company.

Under the express provisions of the lease of February 1, 1926, the landlord agreed to furnish steam to the heating apparatus in the leased premises and permit the using of the passenger and freight elevators, as therein set out, but the landlord did not agree to furnish water to the premises, or janitor service in the hallways and toilets on the second floor, or any other service, as expressly stipulated, "of any kind or character for the demised premises, unless expressly set forth therein." This arrangement continued in effect for a few months before the construction of the building, when an arrangement was effected between the Liggett Company and appellant on June 17, 1926, for a term of twenty years, less one day, from June 1, 1926. Under the new arrangement, appellant surrendered the lease dated February 1, 1926, and the Liggett Company executed a new lease to it, which is the first lease set out herein.

Simultaneously with the execution of this lease, appellant, on June 17, 1926, leased the identical premises, the Pike street store and the second floor, back to the Liggett Company for a period of nineteen years,

eleven months and twenty-nine days from June 1, 1927, for a total rental of $579,000, payable in monthly installments of $2,250 for the first ten years, and $2,500 per month for the last ten years of the lease.

Under this lease, no covenant is made for freight and passenger elevator service, furnishing of steam heat, water or janitor service to the hallways and toilets on the second floor. Hence, there was no express agreement to furnish such services, and, under its terms, appellant did not agree to, and did not subsequently furnish any of the services which it seeks to impose upon respondent herein, to its lessee, the Liggett Company.

The Liggett Company, at the time of the transactions involved herein, was a large and prosperous national drug company, but in March, 1932, it was adjudicated a bankrupt. Up to that time, it had paid as rental approximately $155,250, under the lease which called for rental for the term, which would have ended June 1, 1947, of the sum of $579,000. On November 15, 1932, the Liggett Company assigned all its right, title and interest in and to the ninety-nine year lease to its subsidiary, the Fourth & Pike Street Corporation. On July 1, 1933, respondent Gerbel was appointed receiver of the Fourth & Pike Street Corporation, qualified, and has since so acted. Subsequently, the trustees in bankruptcy of the Liggett Company rejected the lease between appellant and the Ligget Company. Thereafter, appellant, being entitled thereto, collected all the rents accruing on the leased premises after March 1, 1933.

Appellant brought this action to enjoin respondent from discontinuing the elevator, heat and janitor service on the second floor of the building leased by appellant. A temporary restraining order was secured, requiring respondent to furnish such heat and services

pending a hearing. A hearing was had thereon, and the trial court denied appellant a temporary injunction and refused to continue the temporary restraining order in force, which left appellant without elevator service to its tenants on the second floor and left its premises without heat or janitor service to the halls and toilets in this part of the building.

On appeal, the only question to decide is whether appellant is entitled to have such services rendered without paying compensation therefor to respondent. Respondent estimates that the annual cost of furnishing the services in question to the premises of appellant would be $2,707. As appellant's lease does not expire until June 1, 1947, the approximate amount involved is $33,800. Appellant paid respondent for steam from July 1, 1933, to December 30, 1933, which seems to have been its own interpretation that the landlord was not liable to furnish steam.

"In the absence of a statutory requirement, or an express agreement, or of circumstances raising an implied covenant, the landlord is under no obligation to furnish heat, water, or hot water, steam for heat or power, or a current of forced air to his tenant." 36 C. J. 36, § 636.

There is no statutory requirement involved herein. Appellant was owned and managed by extremely capable and successful business men. Had they desired that elevator, heating and janitor services be furnished them under the lease with the Liggett Company, they should have included in the lease that the landlord should furnish such services. They had had a lease covenant whereby steam heat and elevator service were to be furnished. Apparently, they did not consider it important enough to incorporate it in the new lease, and did not do so.

Appellant asserts that the intent of the parties is

the controlling factor in construing an agreement, in which we concur; but it also argues that there could have been no possible interest on the part of the parties to this lease when replacing the lease dated February 1, 1926, with that of June 17, 1926, other than that the lessee should have the same heat and elevator service under the second lease that it had under the first. This is clearly a *non sequitur*.

One of the cases cited by appellant, *Halperin v. McCrary Stores Corporation*, 202 N. Y. Supp. 385, affirmed in 239 N. Y. 547, 147 N. E. 189, involved a case where heat and elevator service had been used under former leases which were renewed, providing for such service where the occupancy of the tenant was on the sixth and seventh floors of the building. There was some doubt as to whether the tenant was entitled to such service at night or only in the daytime. His business was mostly operated at night, which the landlord well knew, and theretofore the services had been usable at night. But there was plainly a necessity in that case for such services. The occupancy was upon the sixth and seventh floors of that building, and had the occupancy of appellant in the Liggett Building been on the sixth or seventh floor, there would have been a manifest necessity for elevator service; and if the other tenants on the higher floors received such services, it would have been only reasonable to imply that appellant would also be entitled to such services.

But there is no such necessity here. The services to the second floor were services which appellant had provided for itself for years, and it is a matter only of convenience to have the elevator service, steam heat and janitor service. They were not a necessity on the second floor. They were not such necessary appurtenances as in cases where ingress and egress were essential to the occupation of the premises for the busi-

ness contemplated, or heating in hotel or apartment buildings, such as in some of the cases cited by appellant, which would be useless to review.

In the instant case, to omit from the language of the twenty-year lease such an important matter as the use of the elevator to the second floor, and heat and janitor service, on the part of such experienced business men as the managers of appellant were, is extremely significant. No right to the services is conferred by the lease in express terms. On the contrary, a clause in the former lease was omitted from the present lease. Therefore, if any right to the services demanded exists, it must be implied from the circumstances. Taking into consideration the settled principles of construction, the language of the former lease and the silence of the present one, no such right was implied in the present case as the use of the elevator system, heat and janitor service to the second floor occupied by appellant. The above is the effect of a decision by Holmes, C. J., in *Cummings v. Perry,* 177 Mass. 407, 58 N. E. 1083.

Since the parties did not adjudge it important enough to contract for the use of the elevator system, heat, toilet facilities and janitor service, it cannot be said that the necessity is so strong as to make the demands of appellant appear reasonable.

This case is governed in principle by our decision in *Jemo v. Tourist Hotel Co.,* 55 Wash. 595, 104 Pac. 820, 30 L. R. A. (N. S.) 926, and cases quoted with approval, where we held that the lessee from a hotel company, having a restaurant in the building under a lease, which had a front entrance on the street and one through the main lobby of the hotel, was not entitled to the use of the side door, into and through the lobby of the hotel, under an implied covenant requiring the landlord to keep that door open, as necessary to the beneficial use of the premises. It was held that the use

of that doorway would be a convenience, but was not a necessity or an appurtenance, and therefore there was no implied easement rendering the landlord liable in damages for closing it.

To the same effect is *Harrison v. Ziegler*, 51 Cal. App. 429, 196 Pac. 914. See, also, *Robinson v. Wilson*, 102 Wash. 528, 173 Pac. 331. In the last cited case, we said that what we were asked to do was to make a new contract grounded in the equities incident to subsequent events, where the parties, who might have foreseen every incident and circumstance there relied on, failed to guard against them in their written contract. That is exactly the situation here.

For the foregoing reasons, we conclude that the judgment of the trial court denying injunctive relief is correct.

Affirmed.

BEALS, C. J., BLAKE, and GERAGHTY, JJ., concur.

TOLMAN, J., dissents.