Bernard Tomson, J.
In this action to recover for one month’s rent, under a lease dated October 15,1955, the lease itself recites that its duration is “for the term of five (5) years (or until such term shall sooner cease and expire as hereinafter provided) to commence on or about the 1st day of March nineteen hundred and fifty-six, and to end on the 28th day of February nineteen hundred and sixty-one”. Section 23 of the lease reads: “If Landlord shall be unable to give possession of the demised premises on the date of the commencement of the term hereof by reason of the fact that the premises are located in a building being constructed and which has not been sufficiently completed to make the premises ready for occupancy or by reason of the fact that a certificate of occupancy has not been procured or for any other reason, Landlord shall not be subject to any liability for the failure to give possession on said date. Under such circumstances the rent reserved and covenanted to be paid herein shall not commence until the possession of demised premises is given or the premises are available for occupancy by Tenant, and no such failure to give possession on the date of commencement of the term shall in any wise affect the validity of this lease or the obligations of Tenant hereunder, nor shall same be construed in any wise to extend the term of this lease ’ ’.
Section 48 reads: “ Anything herein contained to the contrary notwithstanding, it is agreed that this lease shall actually commence thirty (30) days after the landlord has notified the tenant in writing that (a) Certificate of Occupancy has been issued and (b) that possession of the demised premises is tendered by the landlord to tenant. Tenant is not required to pay rent during such period, but rent shall become due when and if tenant opens for business prior thereto.”
Notice referred to in paragraph 48 was given on January 8, 1957.
The precise question presented is whether the lease terminated five years after February 7,1957, as contended by the defendant tenant, or on the 28th day of February, 1961, as urged by the plaintiff landlord. The plaintiff contends that the lease plainly states that the term was “ to end on the 28th day of February, *815 nineteen hundred and sixty-one ’ ’ and that any provision in the lease affecting the length of the term might have resulted in an earlier termination date but that no provision, other than the option to renew, extended it beyond that date. The defendant tenant argues that the term is for an unqualified five years.
The difficulty with the defendant’s position is that whereas the phrase “ term of five (5) years ” is qualified by the words “ (or until such term shall sooner cease and expire as hereinafter provided), ’ ’ the termination date is unqualified. It is significant that the date provided for the commencement of the term is indefinitely stated in the lease as “on or about the 1st day of March nineteen hundred and fifty-six ’ ’. There is no conflict between a five-year term which may sooner terminate and a term specifically fixed to end on February 28, 1961. Also there is nothing in paragraphs 23 or 48 which is inconsistent with such an interpretation of the obviously plain meaning of the provisions referred to.
Each of these clauses deals with the commencement of the term and provides that the tenant is not required to pay rent until the building is completed and possession tendered. Section 23 provides in addition: 1‘ nor shall same be construed in any wise to extend the term of this lease.” Neither paragraph would cause the lease to terminate in 1962, unless it is first determined that the five-year term was unqualified. Such a construction is inconsistent with the explicit language of the lease.
Even if the lease were considered to be ambiguously worded, the application of the rules for construction of leases in such cases does not benefit the tenant. It is true that ambiguities in leases are to be resolved favorably to the tenant. (See 1 New York Law of Landlord & Tenant, p. 601 and 1960 Supp. thereto p. 360, and cases cited therein.) However, the practical construction placed upon a contract by the parties to it is “ sometimes almost conclusive.” (Halperin v. McCrory Stores Corp., 207 App. Div. 448, affd. 239 N. Y. 547.)
There the court said, at page 451, quoting from Battler v. Halloch (160 N. Y. 291, 297, 301) :
“ ‘ In the construction of contracts, where there is no ambiguity, it is the duty of the court to determine their meaning. Moreover, where the terms and language of the contract are not disputed, its legal effect is a question of law to be determined by the court. It is always the duty of a court, in construing a written instrument, if possible, to ascertain the intention of the parties * * *.
*816 £ £ ‘ If this contract is to be regarded as somewhat indefinite or ambiguous, we may resort to the surrounding facts and circumstances as they existed when it was made to aid us in its interpretation and also consider the practical construction which the parties have given it. Its interpretation by them is a consideration of importance. As was said by Swayne, J., in Insurance Co. v. Dutcher (95 U. S. 269, 273): ££ The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done.” (Woolsey v. Funke, 121 N. Y. 87.) ’ ”
At page 452 the court said: £ £ The parties to the contract have furnished the surest evidence of its meaning by what they have done under it. (Insurance Co. v. Dutcher, 95 U. S. 269, 273.) The practical construction placed upon a contract by the parties to it is sometimes almost conclusive. (Nicoll v. Sands, 131 N. Y. 19, 24.) ” (Emphasis supplied.) (See, also, 1 New York Law of Landlord & Tenant, p. 595 and cases there cited; 1 McAdam on Landlord and Tenant [5th ed.], §§ 59, 61.) As expressed in the correspondence, the construction uniformly placed on the lease by the landlord is that the lease was to expire February 28, 1961 (originally shown as 1960, a typographical error). The tenant’s construction may be derived from its letter dated December 13, 1960, which states: “We wish to exercise option to renew this lease for an additional five years, with a five or ten year option, in accordance with said conditions set forth in Article 54 of our present lease.” Paragraph 54 gave the tenant the option to renew the lease for an additional five-year period and provided for “ notice to the landlord by registered mail, return receipt requested, not less than two nor more than four months prior to the expiration date hereof.” The letter of December 13, is a “ notice to the landlord,” “ return receipt requested,” “ not less than two nor more than four months prior ” to February 28, 1961 and is obviously not ‘ ‘ not less than two nor more than four months prior ” to February 7, 1962.
The incorporation in the notice of the phrase “ with a five or ten year option ’ ’ has no logical significance in the consideration of the letter as an effort on the part of the tenant to comply with paragraph 54. The letter was a clear indication that the tenant, on December 13, 1960, understood that the term would end on February 28, 1961 and that it would hold the landlord to the extension of the lease for an additional period of five years from that termination date as provided 11 in Article 54 ’ ’, which specifically detailed the method for the renewal of the lease and the time during which the notice of such renewal was to be *817 served on the landlord. The tenant’s present contention as to the lease cannot he reconciled with the practical construction placed thereon by it in its letter of December 13, 1960.
Judgment is directed for the plaintiff as demanded in the complaint less such sum or sums as have been paid by the defendant to plaintiff pursuant to stipulation, together with interest, costs and disbursements.